THE PEOPLE, Plaintiff and Respondent, v. ANTONIO
GALLEGOS GARCIA, Defendant and Appellant.

No appearance for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

THE COURT.—Antonio Gallegos Garcia was accused of the
murder of John Francis Sellers.  In a jury trial, in which de-
fendant was represented by private counsel, he was convicted
of murder in the second degree.  Probation was denied and
Garcia was sentenced to the State Prison.  He appealed from
the judgment, counsel who had represented defendant at the
trial was appointed on the appeal, but upon his report to the
court that he believed the appeal to be without merit he was
relieved.  We read the record and determined that the appeal

was frivolous. Appellant was notified, given time to file a brief, and none has been filed.

■ The following evidence was received: Defendant Garcia had served about two months of a one year sentence for forgery at an honor-farm type detention camp in Los Angeles County. On Friday, March 10, 1961, he stole a six-shot .22 caliber Smith and Wesson revolver from a fire captain's car.

Numerous witnesses testified on behalf of the People but there was no evidence of the circumstances of the killing of Mr. Sellers other than the confession of defendant and his testimony at the trial. After his arrest Garcia made a voluntary statement which was reported, transcribed and received in evidence The account of the killing of Mr. Sellers which he then gave was repeated from the stand. The following are the salient facts to which he testified:

The revolver was upon the seat of the captain's car. He took it with a purpose of selling it and obtaining money with which to buy drugs; he had no intention of using it; he hid it for several days before he decided to escape from the camp. He left the camp about 7 p. m. because he was tired of ''doing time.'' He retrieved the gun and carried it in a pocket. He intended to hop a train to Los Angeles, where he lived. There were railroad tracks about a half mile from the detention camp. After leaving the detention camp and walking for half a mile he came to a picnic-camp. He observed two men in a building and heard them talking. It was dark, but the area of the refreshment stand where the two men were was lighted. Garcia hid in the bushes and waited until one of the men drove away and the other, the decedent, Mr. Sellers, locked up the refreshment stand and turned the lights out. He approached Mr. Sellers and told him he was an escaped prisoner and wanted a ride to Los Angeles. He was standing near Sellers' truck and saw Sellers reach into the truck; Sellers was holding a flashlight, flashed a light into Garcia's eyes and told him not to move. Garcia thought Sellers had a gun, or something, and dropped to the ground, pulled the revolver from his pocket, closed his eyes and fired; he had no intent to rob the decedent, take his truck, or use the gun. He was just scared and fired in the direction of the light. He drove off in the decedent's truck, throwing the gun and flashlight from the moving vehicle after driving about 15 miles. While driving he noticed what he thought to be a tool box on the seat of the truck, but he did not open it. The box was

found in the truck some two weeks later. It contained $3.15 in change, but was said to have contained about $70 before the incident in question. At the time of his escape Garcia had no money in his possession. Garcia testified that after driving about 30 miles he parked the truck in a residential area behind a bar, where it was later found; a man came out of the bar, gave him a ride to a hotel in East Los Angeles and loaned him $3.00. After he had wandered about for several months visiting relatives in this country and Mexico he was deported from Mexico, was arrested in Juarez and returned to Los Angeles County.

When Sellers failed to appear at his sister's house, as expected, the sister and her husband drove to the picnic grounds and found Sellers' body. He had died from a bullet wound in the head. Although the gun was not found, there was expert testimony that the bullet taken from decedent's skull could have been fired from the gun that was stolen from the fire captain's car.

The verdict implies that the jury found the shooting of Sellers was with malice aforethought, in that it was without considerable provocation (Pen. Code, §§ 187, 188), but that it was not willful, deliberate and premeditated or committed in the perpetration or attempt to perpetrate arson, robbery, rape, burglary, mayhem, or any act punishable under section 288 of the Penal Code. (Pen. Code, § 189, defining murder of the first degree.) Since the verdict implies a finding of malice it necessarily negates the presence of those elements of involuntary manslaughter which consist of the absence of malice and a taking of life in the commission of an unlawful act not amounting to felony. (Pen. Code, § 189.)

The evidence justified the finding that the killing was murder of the second degree.

It was a reasonable inference that defendant was bent on making good his escape, that when Sellers told him to "hold it," he did not fear violence at the hands of Sellers, but only interference with his efforts to escape. Thus the shooting was in the commission of a felony. In fact, prior to the trial for murder, Garcia had been accused of escape from the prison camp and had pleaded guilty.

The evidence was clearly sufficient to justify the implied finding of the jury that the fatal shooting was with malice aforethought. (See 25 Cal.Jur.2d, Homicide, §§ 46, 106, 107; *People* v. *Phelan,* 123 Cal. 551 [56 P. 424]; *People* v. *Todd,* 154 Cal.App.2d 601 [317 P.2d 40].)

The judgment is affirmed.